### CITIZEN'S NAT. BANK OF HORNELLSVILLE *v.* RIDDELL *et al.*

*(Supreme Court, General Term, Fifth Department.* October 19, 1888.)

1. FRAUDULENT CONVEYANCES—CONSIDERATION—EVIDENCE.

In an action to set aside a conveyance as fraudulent, it appeared that the grantor and grantee were brothers and partners in business, and, with two others, owned land, an undivided fourth being conveyed to each. The grantee testified that they were not partners in the land, which was the understanding of one of the co-owners, while that of the other was to the contrary. The land was sold, and the proceeds deposited partly in the firm name and partly in that of the grantee, and checked out by the grantor, upon the agreement, as the grantee testified, to repay him his share, with interest, on demand. The grantor used the money in a hotel business in another state, the title to which, as well as the register and insurance, were in his individual name. All the hotel business was transacted in the grantor's name, and, while there was evidence of admissions by the grantee that he was interested in it, he denied it, and denied making the admissions. The conveyance was made in consideration of the money loaned. *Held,* that the land was not the firm's property, and that the grantor owed the grantee for his share of the proceeds so used.

2. SAME—INSOLVENCY—FRAUDULENT TRANSFERS.

An insolvent debtor may transfer property to a creditor to pay a debt justly due, and such transfer is not void as to other creditors.[1]

Appeal from special term, Steuben county.

Action by the Citizen's National Bank of Hornellsville, N. Y., against Leroy Riddell, and Mary E. Riddell, administratrix of the estate of George Riddell, deceased, to set aside conveyances made by George Riddell in his lifetime to Leroy Riddell as fraudulent. Judgment for defendants. Plaintiff appeals.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ.

*Beard & Griffin,* for appellant. *Eli Soule* and *De Merville Page,* for respondents.

HAIGHT, J. This action was brought by the plaintiff as judgment creditor of George Riddell to have certain conveyances, assignments, and transfers of property by George Riddell to Leroy Riddell adjudged to be fraudulent and void as against the creditors of George Riddell. The answer is, in substance, on the part of Leroy Riddell, that the conveyances, assignments, and transfers were made and accepted by him in good faith for the purpose of paying debts actually owing to him by George Riddell. It appears from the evidence that George and Leroy Riddell were brothers, and in the month of January, 1864, they entered into a copartnership for the practice of medicine, which copartnership continued down into the year 1884; that the firm name was George Riddell & Co., and from time to time they engaged in other business than the practice of medicine; that in the month of August, 1883, George Riddell had become liable on paper indorsed for one A. B. Vorhis to the amount

---

[1] As to when conveyances by insolvents will be held fraudulent as to creditors, see Burhans v. Kelly, *ante,* 175, and note; Neal v. Foster, 36 Fed. Rep. 29, and note.

of about $20,000; that Vorhis had become insolvent, and thereafter, and in September, 1883, made an assignment for the benefit of his creditors, and it was then ascertained that George would be liable upon the paper indorsed by him to the amount of nearly $20,000; that thereafter George Riddell sold, assigned, and transferred to the defendant Leroy Riddell all of the assets of the firm upon the agreement that Leroy Riddell would convert the same into money, and pay the debts of the firm, so far as the assets were sufficient to pay such debts. It also appears that at that time the firm was indebted to various persons in the amount of about $15,000; that the nominal value of the assets was about the sum of $18,000, but the actual value was much less than that sum, the exact amount of which does not appear. It further appeared from the evidence that George Riddell also conveyed to Leroy Riddell several parcels of real estate, and assigned and transferred to him several bonds and mortgages and promissory notes. The trial court has found that these conveyances and transfers were made by George and received by Leroy Riddell for the sole and only purpose of receiving payment of a debt which was then due to him from George Riddell, and that he had no intent to hinder, delay, and defraud any other creditors of George Riddell. It appears that in the year 1867 George Riddell and Leroy Riddell, with Lucius A. Waldo and Lorenzo Davison, became the owners of a large tract of timber land situated in one of the western states; that this land was sold out under contract, and the money derived from such sale was remitted to George Riddell, who paid Waldo and Davison their portion thereof, and the balance, or some portion thereof, was deposited in a bank to the credit of the firm of George Riddell & Co., and some portion of it was deposited in the Canisteo Bank to the credit of Leroy Riddell. It further appears, however, that the money so deposited to the credit of George Riddell & Co., and to the account of Leroy Riddell was checked out by checks of the firm drawn by George Riddell, and was used by him in the Bradford business, of which we shall have occasion to speak further on. It is contended on the part of the defendants that the amount of money collected by George Riddell upon the sale of the western land belonging to Leroy Riddell was the sum of $15,091.19; that it was checked out of the bank by George Riddell upon an understanding or agreement with Leroy Riddell that George might have it to use in his business upon paying interest thereon, and at the time of the conveyances and transfers in question the amount, with the interest included thereon, was the sum of $18,315.52. It is claimed on the part of the plaintiff, in the first place, that George and Leroy Riddell were copartners in their western land transaction, and that the money derived from the sale thereof came to them as copartners, and in the second place that they were also copartners in the Bradford business, so called, and the money that was checked out of the bank by checks drawn by George Riddell was used in such copartnership business, and that consequently George Riddell did not owe Leroy Riddell the sum of $18,000 and upwards, or any other sum. The trial court was of the opinion that the copartnership did not extend to the western lands or to the Bradford business, and found that the indebtedness did exist as claimed by the defendant.

The chief question to be considered upon this review is as to whether such finding is sustained by the evidence. Mr. Davison, one of the parties interested in the western lands, understood that they were copartners, and that they together furnished half of the money to make the purchase, while Mr. Waldo, the other person interested in the lands, did not understand that they were copartners in the land transaction. It appears that each of the parties was deeded an undivided one-fourth interest, and that the contracts for sale were executed by all of them. These facts corroborate the testimony of Leroy, who testified that they were not copartners in the western land transactions, which, taken in connection with the fact that the lands were conveyed to the four owners individually, sustain the findings of the trial court. But

it also appears, as we have seen, that the money was deposited to the credit of the firm, and to the individual credit of Leroy Riddell; while, on the other hand, it also appears that the money was again checked out by checks drawn by George Riddell, so that it becomes important to inquire as to whether the money was again used in the business of the firm, or whether it was used in the individual businses of George Riddell.   Leroy Riddell has testified that it was taken by George and used by him in his individual business, under an agreement that he would repay the same upon demand, and would allow him interest thereon.   George Riddell had constructed an hotel in the city of Bradford, Pa., which was known as the "Riddell House."   He was engaged in running this hotel, and this constituted the Bradford business, so called; and the question is raised as to whether or not they were copartners in this business.   Several witnesses testified to conversations in which Leroy had declared himself as interested in the Bradford business.   He, however, denies that he was interested, or that he made such statements, and declares that he was not interested in that business.   It appears that the title to the property was in George Riddell; that it was conducted in his name; that the register was entitled in his name; that the property was insured in his name; and that produce and provisions for use in the hotel were shipped to George in his individual name.   Upon this evidence the trial court found, and we think properly, that the Bradford business was the individual business of George Riddell.   This being the case, it follows that the money belonging to Leroy Riddell received by George Riddell upon the sale of the western lands is traced into the hands and business of George Riddell, and no claim is made that it has ever been repaid to Leroy Riddell.   It is contended further, however, that the transfers were made with the intent to hinder and delay creditors.   George, however, had the right to pay his brother Leroy any debt that was actually due and owing to him, and Leroy Riddell had the right in good faith to collect and receive pay for that which was justly and truly his due.   He tells us that he first learned of his brother's indorsing for Vorhis in July; that he became alarmed, and insisted on his brother's paying him the amount due and owing to him at that time, and had frequent interviews thereafter until the conveyances and transfers in question were made; that he had no other motive in the matter than to get his pay, etc.   The trial court has believed the testimony in this regard, and, inasmuch as there is nothing to contradict it, we must regard the conclusions of the trial court as conclusive upon this question.   As to the transfer of the copartnership property for the payment of the debts of the copartnership, there is nothing before us from which we can determine that there will be any surplus left after the payment of such debts.   There is consequently no fraud established in reference to this part of the transaction, and our conclusions are that the findings of the trial court should be sustained.   The evidence taken upon the trial, together with the exhibits, is very voluminous.   Many questions are raised in reference to the admission and rejection, of evidence.   We have examined them all with some care, and are of the opinion that no sufficient reason exists for the granting of a new trial.   The judgment should consequently be affirmed, with costs. So ordered.

BARKER, P. J., and BRADLEY and DWIGHT, JJ., concurred.